208 F.2d 358
 VICTORY PACKING CO.
v.
KENDALL.
 No. 644.
 United States Emergency Court of Appeals
 Heard at Washington, D. C., October 17, 1953.
 Decided November 23, 1953.
 
 Albert L. McDermott, Washington, D. C., with whom John L. Ingoldsby, Jr., and Ingoldsby & Coles, Washington, D. C., were on the brief, for complainant.
 Bruce H. Zeiser, Attorney, Department of Justice, Washington, D. C., with whom Warren E. Burger, Asst. Atty. Gen., Edward H. Hickey, Chief, General Litigation Section, George Arthur Fruit, Attorney, Dept. of Justice, and James A. Durham, Acting General Counsel, and Israel Convisser, Asst. Gen. Counsel, Washington, D. C., both of the Economic Stabilization Agency, were on the brief, for respondent.
 Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.
 McALLISTER, Judge.
 
 
 1
 Victory Packing Company, complainant, is a slaughterer of horses and a processor of horse meat which is eventually sold and distributed to pet shops. Its ceiling prices were established by government price regulations. During 1950, the company engaged in a price war with a competitor in the San Francisco area, and finally drove him out of business in April 1951.
 
 
 2
 In May 1951, complainant increased its ceiling prices for horse meat in the above mentioned area. The base period, which had been selected in the price regulation for the establishment of the highest prices at which "manufacturers" of horse meat could sell such product, was the period from December 19, 1950, to January 25, 1951. When complainant increased its ceiling prices in May 1951, and, also, at subsequent times, it increased them above the ceiling prices established by the price regulation.
 
 
 3
 Subsequently, in May 1952, the government commenced a suit against complainant seeking damages under the appropriate statute for the overcharges; and thereafter, in July 1952, complainant filed an application for retroactive adjustment under supplementary regulations of the General Ceiling Price Regulation, or for amendment thereof, in order to validate complainant's prices at which its product had been sold in San Francisco. The Director issued an order denying the application and petition for amendment on the ground, among others, that its price increases had not been in any way approved by the Office of Price Stabilization and that the regulations relied upon were, for other reasons, inapplicable.
 
 
 4
 In November 1952, complainant, accordingly, filed a protest against the order of the Director, and, also, against Supplementary Regulations 26 and 27. In January 1953, the Director issued an order dismissing the protest, and after the issues had been submitted to the Board of Review, upon its recommendation after hearing, the protest was denied.
 
 
 5
 The issues, as they are presented to this court, are essentially the same as those before the Board of Review:
 
 
 6
 1. Whether ceiling prices established under the General Ceiling Price Regulation for horse meat sold by complainant in the San Francisco area were abnormally low because of a "special deal" in effect during the base period provided in the regulation, thereby entitling complainant to an adjustment of its ceiling prices under Supplementary Regulation 26.[1]
 
 
 7
 2. Whether complainant is a wholesaler or retailer of horse meat, entitled to have its sales, during the base period, considered as having been made under the terms of an "introductory offer," and, therefore, in accordance with the regulation, subject to an increase of ceiling prices to an extent necessary to bring its ceiling prices of horse meat in line with the most closely competitive products of the same class when sold to the same class of purchaser.[2]
 
 
 8
 Neither of the supplementary regulations relied upon by complainant has any application to it or to its business practices. Supplementary Regulation 26, providing for the adjustment of ceiling prices because of "special deals" in effect during the base period, was not intended, according to the Statement of Considerations accompanying its promulgation, "to permit price increases in instances where the price reduction which was in effect during the base period was predicated upon competitive factors and was not intended to be temporary." Complainant's prices in effect during the base period were admittedly the result of competition in its most vigorous sense — a price war. There was no evidence to sustain the claim that complainant's lower prices during the base period were due to a "special deal."
 
 
 9
 Supplementary Regulation 27, applying to wholesalers or retailers, likewise did not apply to complainant. It does not claim to be a retailer, so that fact is not in controversy. It claims, rather, to be a wholesaler. A sale at wholesale is defined in the General Ceiling Price Regulation, as follows: "Sale at wholesale means a sale by a person who buys a commodity and resells it, without substantially changing its form, or who supplies a service, to an industrial or commercial user, or to any person other than the ultimate consumer." Complainant buys horses, slaughters them, and sells horse meat. It does not buy a commodity and resell it without substantially changing its form; and it does not supply a service to an industrial or commercial user. It supplies only horse meat products. Complainant, therefore, cannot be classified either as a retailer or wholesaler. According to the General Ceiling Price Regulation, the term, manufacturer, "refers to any person who is engaged in business other than as a wholesaler or retailer." Complainant, therefore, is a manufacturer, and, as such, is not entitled to the relief provided for wholesalers and retailers under Supplementary Regulation 27.
 
 
 10
 Complainant argues that the Administrator should have included in the definition of "a sale at wholesale," the sale at wholesale by a manufacturer, even though such manufacturer had purchased a commodity and changed its form prior to resale. This, of course, is directly contrary to the provision in the General Ceiling Price Regulation defining a sale at wholesale, as above set forth. Complainant, therefore, by this contention, attacks the regulation itself rather than the interpretation placed upon it by the Administrator. But neither the protest nor the complaint attacks the validity of the regulation and, accordingly, there is no basis laid in this case on which the court could consider such a contention.
 
 
 11
 In accordance with the foregoing, a judgment will be entered dismissing the complaint.
 
 
 
 Notes:
 
 
 [1]
 Supplementary Regulation 26 to the General Ceiling Price Regulation, in so far as here pertinent, provides:"What this regulation does." This regulation permits ceiling prices established under the General Ceiling Price Regulation for manufacturers and wholesalers to be adjusted if they are abnormally low because of a `special deal' in effect during the period from December 19, 1950 to January 25, 1951."
 
 
 [2]
 Supplementary Regulation 27 to the General Ceiling Price Regulation provides, in so far as here pertinent, as follows: "If you are a wholesaler or retailer who during the base period was selling a commodity or service under the terms of an introductory offer, announced and intended to remain in effect for a limited time, at a price which was substantially below the prices prevailing among competing products when sold by the same class of sellers to the same class of purchasers, you may increase your ceiling prices of that commodity or service to the extent necessary to bring your ceiling prices of such commodities or services in line with the most closely competitive products of the same class when sold to the same class of purchaser."